ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MADISON RE I.I.<br><br>APELANTE<br><br>V.<br><br>THE PHOENIX FUND LLC;<br>PHOENIX UNIVERSAL<br>CAPITAL I LLC<br><br>APELANTES | TA2026AP00354 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2025CV01872<br><br>Sobre:<br>Cobro de Dinero y Ejecución de Garantías |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de junio de 2026.

Comparece ante nos Madison Re I.I. (en adelante, "MadRe" o "parte apelante"), a los fines de solicitar nuestra intervención para que revoquemos parcialmente la *Sentencia* emitida y notificada el 10 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante el referido dictamen, el foro primario declaró Con Lugar la *Moción Informativa* presentada por MadRe, en la que informó que The Phoenix Fund LLC (en adelante "TPF") se acogió al Capítulo 11 de la Ley de Quiebras Federal, 11 USC sec. 362. En su consecuencia, decretó la paralización de los procedimientos del caso de epígrafe en su totalidad, tanto para MadRe, como para Phoenix Universal Capital I LLC (en adelante "PUC"), en conjunto y en lo sucesivo ("parte apelada").

Por los fundamentos que exponemos a continuación, se confirma la *Sentencia* Apelada. Veamos.

**I.**

El 10 de abril de 2025, MadRe presentó una *Demanda* en contra de TPF y PUC, sobre cobro de dinero y ejecución de garantías.[1] Alegó que el 22 de marzo de 2024, MadRe otorgó un Contrato de Préstamo a favor de PUC, por la cantidad de $10,000,000.00. Arguyó que dicho préstamo fue respaldado por un Pagaré a la orden de MadRe, con fecha de vencimiento de 20 de mayo de 2024. Sostuvo que, a pesar de una prórroga otorgada y un enmienda al acuerdo, PUC incumplió con su obligación de pago, por lo que le envió a este una notificación de incumplimiento y le concedió treinta (30) días para remediar dicho incumplimiento. Alegó que, posteriormente, PUC y TPF suscribieron un Acuerdo de Indulgencia por Morosidad con MadRe. Sostuvo que mediante dicho Acuerdo, estos reconocieron sus incumplimientos y dispusieron que, dado que PUC y TPF son entidades afiliadas y sujetas a un mismo control corporativo, cualquier pago adeudado podría ser efectuado por cualquiera de ellas. Alegó que, sin embargo, PUC y TPF incumplieron con sus obligaciones de pago bajo el Contrato de Préstamo, el Pagaré y el Acuerdo de Indulgencia por Morosidad.

El 22 de agosto de 2025, PUC y TPF presentaron un escrito intitulado *Contestación a la Demanda, Reconvención y Demanda Contra Terceros.*[2] En lo referente a la *Demanda* incoada en su contra, alegaron que cumplieron con sus obligaciones y que actuaron en todo momento de buena fe. Adujeron que MadRe impuso términos irrazonables, no trabajó en un plan de pago razonable para mitigar sus pérdidas y que participó en conductas que violaron el deber de buena fe y lealtad en los contratos. Sostuvieron, además, que PUC y TPF no están en mora, puesto que MadRe no exigió adecuadamente el cumplimiento de la obligación y que las deudas alegadas son ilíquidas, contingentes, prematuras, incorrectas, exageradas y especulativas.

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).

[2] Entrada Núm. 14 del SUMAC TPI.

Pasados múltiples trámites procesales, el 9 de marzo de 2026, MadRe presentó una *Moción Informativa,* mediante la cual le informó al foro de instancia que "el 23 de febrero de 2026, The Phoenix Fund LLC presentó una petición bajo el Capítulo 11 del Código de Quiebras federal, cuyo epígrafe es In re The Phoenix Fund LLC, caso número 26-00712 (ESL)".[3]

Al día siguiente, el 10 de marzo de 2026, el foro sentenciador emitió y notificó la *Sentencia* que hoy nos ocupa.[4] Mediante el referido dictamen, decretó la paralización de los procedimientos del caso de epígrafe en su totalidad, tanto para MadRe, como para PUC.

Inconforme, el 23 de marzo de 2026, MadRe presentó una *Moción de Reconsideración Parcial.*[5] En dicha Moción, alegó que la paralización automática dispuesta en el Código de Quiebras no procede en cuanto a PUC. Ello, ya que este es el deudor principal de la obligación reclamada y no se acogió a los remedios de quiebra. Adujo que la única entidad que presentó una petición fue TPF, quien compareció en la obligación únicamente como garantizador subsidiario. Sostuvo que la paralización en cuanto a PUC ocasionaría un retraso injustificado en la reclamación de un acreedor asegurado cuya colateral pertenece a PUC y no al caudal de quiebra de TPF. El día siguiente, dicha *Moción* fue declarada No Ha Lugar.[6]

Inconforme aún, el 8 de abril de 2026, la parte apelante acudió ante nos mediante un escrito de *Apelación*[7] y esbozó el siguiente señalamiento se error:

> Erró y abusó de su discreción el TPI al extender los efectos de la paralización automática a PUC, quien no es deudor en quiebra, en contravención al principio de que la protección del *Automatic Stay* es estricta, personalísima y no extensible a codeudores ni a terceros.

---

[3] Entrada Núm. 68 del SUMAC TPI.

[4] Entrada Núm. 69 del SUMAC TPI.

[5] Entrada Núm. 72 del SUMAC TPI.

[6] Entrada Núm. 73 del SUMAC TPI.

[7] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

El 14 de abril de 2026, emitimos y notificamos una *Resolución*, en la que dispusimos que la parte apelada tendría treinta (30) días para presentar su alegato. Sin embargo, el 11 de mayo de 2026, la parte apelada presentó una *Solicitud de Prórroga Para presentar Alegato en Oposición*, en la que nos solicitó un término adicional de doce (12) días para responder al recurso presentado por la parte apelante. Considerada la referida petición, emitimos una *Resolución*, mediante la cual concedimos la prórroga solicitada.

En cumplimiento con nuestra orden del 12 de mayo de 2026, la parte apelada, por conducto de Driven, P.S.C., en su carácter de Síndico (en adelante, "Driven" o "Síndico"), presentó una *Oposición a Apelación*[8] el 26 de mayo de 2026. En esencia, alegó que la continuación de los procedimientos en contra de PUC afectaría directamente propiedad del caudal de TPF, que ello menoscabaría uno de sus activos más significativos y comprometería los esfuerzos de reorganización de TPF bajo la quiebra. Adujo que PUC no es un mero codeudor solidario independiente de TPF, sino que es una subsidiaria indirecta al 100% cuyo interés de membresía constituye propiedad del caudal y que consecuentemente, PUC constituye "property of the estate" del TPF. Sostuvo, además, que el Contrato de Préstamo reconoció que el TPF fungía como la "parent company" de PUC dentro de la misma estructura crediticia y que el Acuerdo de Indulgencia reconoció que ambas entidades eran "affiliated and part of the same controlled group". Además, anejó una Orden intitulada *Order Granting Receiver's First Urgent Motion for Entry pf a Nunc Pro Tunc Order (I) Authorizing the Removal and Substitution of Directors of Subsidiaries of the Phoenix Fund LLC or Subsidiaries Thereof and (II) Granting Related Relief*[9], emitida por Tribunal de Quiebras para el Distrito de Puerto Rico, el 26 de mayo de 2026. Alegó que el Tribunal de Quiebras confirmó la supervisión activa del Síndico sobre las subsidiarias de TPF al autorizarlo

---

[8] Entrada Núm. 5 del SUMAC TA.

[9] Pág. 39 (Anejo D) de la Entrada Núm. 5 del SUMAC TA.

en la referida *Orden* a remover o sustituir a los directores de PUC. Adujo que dicha autorización demuestra inequívocamente que el foro federal ejerce jurisdicción y control sobre dichas entidades como parte integral del caudal de TPF.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

Ante la presentación de una petición de quiebra, inmediatamente se crea un caudal en quiebra, el cual consiste de toda la propiedad que estará sujeta a la jurisdicción del Tribunal de Quiebras. *CMI Hospital v. Depto. Salud*, 171 DPR 313, 322 (2007). La presentación de esta petición conlleva la paralización automática de diversos procesos contra la parte que se acoge a los remedios provistos por El Código de Quiebras Federal. *Id.* Todo lo relacionado a la regulación de la paralización automática se encuentra esbozado en la sección 362 del Título 11 del Código de los Estados Unidos (11 USC sec. 362). "La paralización automática es una orden para cesar todas las gestiones de cobro, retención, embargo o ejecución de hipoteca contra una persona que ha solicitado acogerse a la protección de la ley de quiebras." *Id.* Su existencia no depende de una notificación formal, pues surte efectos desde que se presenta la petición de quiebra y se extiende hasta que se dicta la sentencia final. *BPR v. SLG Goméz-López,* 213 DPR 314, 330 (2023); *Peerles Oil v. Hnos. Torres Pérez*, 186 DPR 239, 255 (2012); *In re Jamo,* 283 F.3d 392, 398 (1er Cir. 2002).

La Ley de Quiebras le permite al deudor establecer un plan de pago o reorganización, o el relevo de las presiones financieras que lo llevaron a la quiebra. *Peerles Oil v. Hnos. Torres Pérez*, supra, pág. 257. Para determinar los bienes que integraran el caudal objeto de quiebra, el deudor tiene la obligación de presentar un listado actualizado de sus activos y pasivos. *CMI Hospital v. Depto. Salud*, supra, pág. 322. Durante el procedimiento de quiebra, el síndico o deudor en posesión asume el control de todos los bienes del patrimonio de quiebra para mantener su valor y

asegurar posteriormente su adecuada distribución. *In re García,* 553 B.R.1, (Bankr. D.P.R. 2016). El referido control de bienes funciona como medida de seguridad para evitar la posible interferencia de acreedores que intenten poseer o controlar los bienes del caudal de quiebra. *Id.*

El Código de Quiebras establece una serie de prohibiciones para salvaguardar el patrimonio del deudor durante la paralización automática y promover una asignación equitativa del crédito que le corresponde a cada acreedor. Véase, *In re García,* supra. De esta manera, se evita el despilfarro de los activos del deudor ante posibles embargos de los acreedores. *Id.* Así pues, la existencia de una paralización automática impide, entre otras acciones, las siguientes: el comienzo o la continuación de cualquier acción judicial o administrativa en contra del deudor, pendiente o que pudo comenzar antes del inicio de la petición de quiebra; el inicio de acciones con el fin de recuperar reclamaciones realizadas con anterioridad a la petición; la ejecución de sentencias contra el deudor o su propiedad obtenidas antes de la presentación de la petición; cualquier acción para ejercer control sobre la propiedad del caudal de quiebra; cualquier acción para crear, perfeccionar o hacer efectivo un gravamen en una propiedad que pertenece al caudal o para crear, perfeccionar o hacer efectivo un gravamen contra la propiedad del deudor, cuando el referido gravamen asegura una propiedad que surgió antes de la petición de quiebra. 11 USC. 362(a); *BPR v. SLG Gómez-López,* supra, pág. 330; *Peerles Oil v. Hnos. Torres Pérez*, supra*,* pág. 255-256; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 491 (2010); *CMI Hospital v. Depto. Salud*, supra, pág. 322. Véase, además, Instituto de Estudios Judiciales, Oficina de Administración de los Tribunales, revisado por L. Figueroa Rivera, *La Paralización Automática de la Ley de Quiebras*, 1998, pág. 9-10.

Ahora bien, nuestro Tribunal Supremo ha reconocido que, en ciertas circunstancias inusuales, un Tribunal puede paralizar procedimientos en contra de codeudores no amparados por la quiebra, conforme a la Sección 362, *supra*; *Peerles Oil v. Hnos. Torres Pérez*, supra*,* pág. 258. El más alto

foro expresó que, según resuelto por el Tribunal de Apelaciones para el Cuarto Circuito, dichas circunstancias inusuales ocurren cuando:

> "[e]xiste tal identidad entre el deudor y el tercero demandado de manera que podría decirse que el deudor es la parte demandada real y que una sentencia contra el tercero demandado constituiría, en efecto, una sentencia o resolución contra el deudor", … o cuando los procedimientos contra los codemandados nodeudores puedan reducir o minimizar "la propiedad del deudor [como el fondo de seguro del deudor] el perjuicio de los acreedores del mismo como conjunto." *Id*, citando a *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4to Cir. 1998).

Así que, salvo alguna de las mencionadas circunstancias excepcionales, "la iniciación del procedimiento de quiebra es una defensa personal que puede invocar el deudor peticionario únicamente, pero que no beneficia a los codeudores". *Id*, citando a *The Bankruptcy Code's Automatic Stay*, 895 PLI/Comm 661 (2007).

**III.**

La parte apelante plantea, en su único señalamiento de error, que el Tribunal de Primera Instancia incidió al extender los efectos de la paralización automática a PUC. Sostuvo que este no es un deudor en quiebra, y que dicha extensión se realizó en contravención al principio de que la protección del *automatic stay* es estricta, personalísima y no extensible a codeudores ni a terceros. Alega que TPF y PUC son entidades jurídicas separadas y distintas, y que los procedimientos contra PUC no tendrían el efecto de reducir o afectar la propiedad o "estate" de TPF.

Por el contrario, la parte apelada, por medio del Síndico, sostiene que la continuación de los procedimientos en contra de PUC constituye un acto que afectaría directamente la propiedad y los activos del caudal de la quiebra de TPF. Arguye que existe una cadena ininterrumpida de propiedad y control corporativo entre TPF, PUC Holdings LLC y PUC. Más aún, sostiene que dicho control fue confirmado por el Tribunal de Quiebras, mediante la *Orden* emitida por este, en la que autorizó al Síndico a remover o sustituir a los directores de PUC.

El foro sentenciador, al ser informado de que TPF se acogió al Capítulo 11 de la Ley de Quiebras Federal, paralizó los procedimientos del

caso y dejó sin efecto la Conferencia Inicial agendada. En su consecuencia, se paralizó el caso en su totalidad, incluyendo los procedimientos en contra de PUC.

El Código de Quiebras Federal dispone que la presentación de una petición de quiebra conlleva una paralización automática de distintos procesos contra el peticionario de la quiebra. *CMI Hospital v. Depto. Salud*, supra. Además, establece que dicha presentación implica la creación de un caudal de quiebra, que consiste en la propiedad del que se acoge a esta. *Id*. Ahora bien, dispone también de manera clara que, dicha paralización automática la puede invocar únicamente el deudor peticionario. *Peerles Oil v. Hnos. Torres Pérez*, supra. O sea, que la paralización no beneficia a los codeudores ni garantizadores de la deuda. *Id*. Además, el Tribunal de Quiebras para el Distrito de Puerto Rico en su opinión en *In Re: María Socorro Figueroa Lugo, Debtor*, 2025 WL 1711035, reiteró que "[t]he automatic stay of section 362(a) **protects only the debtor, property of the debtor or property of the estate**[…]. It does not protect non-debtor parties or their property […]." Citas omitidas. (Énfasis Nuestro).

No obstante, la paralización se puede extender a un codeudor no amparado por la quiebra si "existe tal identidad entre el deudor y el tercero demandado de manera que podría decirse que el deudor es la parte demandada real y que una sentencia contra el tercero demandado constituiría, en efecto, una sentencia o resolución contra el deudor[…]". *Id*. Cabe señalar que la jurisprudencia lo que contempla es la circunstancia de cuando un deudor principal se acoge a quiebra, más no el garantizador. En estas situaciones es que claramente la paralización automática no aplica, ya que parte de una premisa de que el deudor es quien está en quiebra y el garantizador, presuntamente una entidad separada, no se encuentra en quiebra y puede responder por la deuda.

En este caso, nos encontramos frente a una situación distinta. O sea, el deudor principal de la deuda, PUC no es quien se acogió a la quiebra directamente. Sino que fue TFP, el garantizador subsidiario de esta.

Además, TPF no es solo el garantizador de la deuda de PUC, sino que es el único miembro de PUC Holdings LLC, que a su vez es el único miembro de PUC, el deudor principal. Es esta cadena ininterrumpida a la que alude TPF y alega que, por ende, existe una integración económica y operacional entre estas dos entidades. En otras palabras, que es parte del caudal en quiebra o "property of the estate" de TPF.

La interrogante ante nuestra consideración es si la continuación de los procedimientos en contra de PUC y una determinación subsiguiente por un Tribunal, tienen un impacto sobre el caudal de TPF que se encuentra bajo quiebra. O sea, si esta continuación en contra de PUC sería, en efecto, un procedimiento en contra del caudal de TPF. Dadas las circunstancias de que PUC es reconocida como una subsidiaria de TPF por el Tribunal de Quiebras, y que a base de ello autorizó al Síndico a remover a los directores de esta, es forzoso concluir que una sentencia en contra de PUC sería, en efecto, una sentencia en contra del caudal de TPF.

Nos encontrarnos frente a una circunstancia excepcional, que amerita mantener el caso paralizado en cuanto a PUC, hasta tanto se adjudique el proceso frente al Tribunal de Quiebras. Por lo que, procede confirmar el dictamen apelado.

**IV.**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones